IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JACOB RICH STREEPER,<br><br>Petitioner,<br><br>v.<br><br>ROBERT POWELL,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DISMISSING PETITION WITHOUT PREJUDICE**<br><br>Case No. 1:24-cv-15 DAK<br><br>District Judge Dale A. Kimball |

Inmate Jacob Rich Streeper, ("Petitioner") petitions this court for habeas corpus relief, arguing that his conviction by the state of Utah is "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254 (2026) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") Respondent's answer asserts that Petitioner has not met the standard for federal habeas relief because Petitioner fails to show that the state court decision was contrary to or unreasonably applied federal law. *See* 28 U.S.C. § 2254(d)(1), (2). Petitioner's Reply attempts to assert additional claims of ineffective assistance of counsel.

For the reasons below, the Petitioner's application for habeas relief is DENIED.

## BACKGROUND

In August 2016, Petitioner's wife discovered pornographic images of children on Petitioner's iPod. Petitioner eventually confessed to his wife, his stepfather and then to police that he had sexually assaulted his half-sister when she was a child and more recently, his niece and each of his three daughters (ages 3 through 12 years old). At trial, Petitioner recanted some

of his confessions. The Utah Court of Appeals provided a full recitation of the facts involved in the case in a detailed and thorough decision. *State v. Streeper*, 523 P.3d 710, 711-14 (Utah Ct. App. 2022).

On appeal, Petitioner argued that his counsel had been deficient for failing to call an expert on false confessions. The Utah Court of Appeals remanded to supplement the record with testimony from defense counsel and a false confession expert.

The Utah Court of Appeals' analysis applied the Utah standard for ineffective assistance of counsel, which is derived from the federal *Strickland* standard. *Streeper*, 523 P.3d at 716-17 (citing *State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871 (Utah 2020) and *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)) ("To prevail on a claim of ineffective assistance of counsel, Streeper "must demonstrate that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense.")

Pertaining to the proposed expert on false confessions, the trial court found that:

> • Expert asserted that "false confessions do occur, but it is not clear how often they occur."
>
> • Expert explained that the "Reid method" of police interrogation, commonly used in the United States, functions by "(1) establishing a sense of hopelessness in the individual being interrogated; (2) causing the individual to feel that confessing is their best option by offering excuses for their conduct and raising the costs of not confessing; and (3) obtaining a detailed confession from the individual." The goal of police interrogation using this method "is to convince people to confess when they would not otherwise do so using the following tactics: convincing them that the officers already know the truth and have proof of their guilt; encouraging them to tell their side of the story; suggesting that if they confess they may get in less trouble, get help, or go home; and reminding them that taking responsibility for their actions will be looked upon favorably by others."

• Expert testified that the "Reid method of interrogation has been criticized by scholars and disavowed by organizations, such as the Federal Bureau of Investigation."

• Expert "stated that suspects accused of sexual abuse are more vulnerable to law enforcement's efforts to establish a feeling of hopelessness because suspects believe there is no evidence to prove they did not commit the crime, and/or it is their word against the victim's word."

• Expert testified "that individuals falsely confess when interrogated by law enforcement for various reasons, including: (1) believing that if they confess, the interrogation would end and they could leave; (2) believing the interrogator's minimization of their alleged actions, and that if they confess they would not get in trouble, or get in less trouble than if they did not confess; (3) wanting to avoid further conflict; (4) concentrating on escaping the present situation without considering potential future consequences; (5) [being] overwhelmed with stress; and (6) [believing] that even if they falsely confess, once the investigation is concluded, they will be exonerated based on the evidence."

• Expert "testified that the same pressures to falsely confess during interrogations by law enforcement can exist, and be even more potent, in interrogations by family members because family members can make threats and promises based on familial relationships that law enforcement officers cannot. However, she did not refer or cite to any research that supports this conclusion."

• Expert explained that "[r]esearch has shown that jurors often assume that a confession indicates a defendant is guilty and do not understand that even a 'normal' innocent person may falsely confess given the right conditions." And Expert testified that "[s]tudies suggest that when attempting to detect if a confession is false, people are wrong approximately 50% of the time."

• Expert reviewed the transcripts, listened to the audio recordings of the two police interviews, and read the statements made by Streeper's family members. Expert concluded that the officers used the Reid method.

• Expert "testified that the officers who interviewed [Streeper] established an overall sense of hopelessness during the interviews . . . by reminding [Streeper] that he had already confessed to his family, by accusing him of not telling the whole story, and by stating

> that they knew what happened and just wanted him to confirm what they already knew."
>
> • Expert "believed that the officers convinced [Streeper] that confessing was his best option by suggesting that [Streeper] did not have bad intentions, his conduct was impacted by his addiction, he had lessened the negative impact on the children by engaging in inappropriate conduct while they were sleeping, he should take the opportunity to tell his side of the story, he would be worse off if he did not confess, his statements would be confidential, and confessing would help heal his family."
>
> • Expert believed that Streeper "exhibited some traits of individuals who may be prone to false confessions including being stressed, depressed, suicidal, and addicted to opioids."
>
> • While Expert "would not testify as to whether any of [Streeper's] statements were actually false," she "concluded that less weight should be given to [Streeper's] confessions to both his family and the police because of both his physical and mental condition and the tactics used by his family and the police to get him to confess."

*Streeper*, 523 P.3d at 715-16.

The Court of Appeals summarized the trial court's findings of fact about counsel's decision to forgo expert testimony on false confessions:

> (1) Counsel had practiced law for nearly forty-three years and served as a criminal defense attorney in approximately 200 trials; (2) Counsel "stated that when he was assigned as [Streeper's] public defender, [Streeper] told him he had confessed to the police because he was under the influence of the drugs he took to overdose"; (3) Counsel "determined that the officers did not engage in any conduct during the interviews that would lead him to believe [Streeper] had been tricked or coerced into making the confessions"; and (4) Counsel "listened to the police interviews with [Streeper], reviewed [Streeper's] medical records from the hospital, and conducted research to determine if he should hire an expert to testify that [Streeper] was under the influence of drugs when he confessed, but determined that the evidence did not indicate [Streeper] was under the influence of any drugs that could have caused him to make a false confession."

*Id.* at 716.

And finally, the Court of Appeals summarized Petitioner's own testimony on remand:

> (1) Streeper said Wife was "very harsh" when asking him what he had done to their daughters, causing him to make "things up to give her the answers he thought she was looking for and to stop the questioning"; (2) Streeper asserted that he confessed to Stepfather because Stepfather "pressured him with religion"; (3) Streeper "said that he confessed to the police because they were manipulative and kept pushing and prying and he was tired of it"; (4) Streeper "did not state that he informed [Counsel] that he falsely confessed" in response to the allegedly manipulative interrogation techniques; and (5) Streeper "testified that he believed the police investigation and his children would exonerate him from the things he was making up."

*Id*.

The Court of Appeals limited its analysis to the second prong of the *Strickland* test, whether Petitioner had been prejudiced by his counsel's allegedly deficient performance. *State v. Streeper,* 523 P.3d at 717. The court then articulated six reasons, thoroughly analyzed based on the record testimony, supporting its conclusion that Petitioner had not been prejudiced by the lack of expert testimony on false confessions. *Id.* at 717-719.

## PETITIONER'S CLAIMS

Petitioner's habeas petition (ECF No. 1) (the "Petition") seeks relief on a single claim that his trial counsel deprived him of his Sixth Amendment right to representation by failing to call an expert witness on false confessions. Petitioner's Reply (ECF No. 12) asks the court to consider additional claims that his trial counsel was ineffective for allowing his confessions to the police to be admitted into evidence.

However, Petitioner procedurally defaulted the additional claims asserted in his Reply. The Supreme Court has declared that "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. §2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). The Tenth Circuit has held that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Petitioner presented his additional claims to the Utah Courts in his motion for extraordinary relief under Utah Rule 65B. The Utah Court of Appeals denied the motion on procedural grounds. The court determined that the claims were ineligible for relief under Rule 65B because Petitioner still had the opportunity to present them in a petition for post-conviction relief under the Utah Post Conviction Remedies Act. Order, *Streeper v. Utah*, No. 20231016-CA (Utah Ct. App. Jan. 12, 2024) (ECF No. 11-10, at 2) *aff'd*. No. 20240071-SC (Utah, Feb. 29, 2024) (ECF No. 11-11) ("Because Streeper has a remedy under the PCRA, he was not eligible for relief under rule 65B.").

Petitioner declined to pursue his claims in a PCRA petition, and his period to do so has now passed. The PCRA bars claims filed more than one year after the cause of action accrues. Utah Code Ann. § 78B-9-107(1) (2026) ("A petitioner is entitled to relief only if the petition is filed within one year after the day on which the cause of action has accrued."). Petitioner's cause of action under the PCRA accrued upon "the entry of the denial of the petition for writ of certiorari" *See* Utah Code Ann. § 78B-9-107(2)(d). The Utah Supreme Court denied certiorari of Petitioner's direct appeal on April 3, 2023. Although the period for Petitioner to exhaust his additional claims through a PCRA petition remained open when the Utah Supreme Court denied

certiorari of his 65B motion on February 29, 2024, that opportunity has now expired. *See* Utah Code Ann. § 78B-9-106(1)(e) ("A petitioner is not eligible for relief under this chapter upon any ground that is barred by the limitation period established in Section 78B-9-107.").

Federal courts may excuse procedural default if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. A federal court "may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") *Thomas*, 218 F.3d at 1221 (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (alteration in original)). The Tenth Circuit Court of Appeals has sustained the PCRA filing restrictions in Utah Code Section 78B-9-106(1) as independent and adequate state grounds to support procedural default of federal claims. *See, e.g., Prater v. Blood*, No. 22-4024, 2022 U.S. App. LEXIS 33747, at *10, 2022 WL 17491939 (10th Cir. Dec. 8, 2022) (unpublished); *Williams v. Utah*, No. 23-4092, 2024 U.S. App. LEXIS 16072, at *6, 2024 WL 3272243 (10th Cir. July 2, 2024) (unpublished).

The Utah Court of Appeals put Petitioner on notice that a remedy was potentially available to him under the PCRA. Petitioner has suggested no cause to excuse his decision to decline that opportunity.

Nor has petitioner shown that his convictions result in a fundamental miscarriage of justice. A "fundamental miscarriage of justice" means that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). The Supreme Court has described this exception as being "concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To qualify for the miscarriage of justice

exception, a petitioner must show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006) ("A petitioner's burden at the gateway stage is to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'"). The standard requires an applicant to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup,* 513 U.S. at 324); *Hale v. Fox*, 829 F.3d 1162, 1171 (10th Cir. 2016) (citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013)) ("A prisoner can establish actual innocence in post-conviction proceedings only by bringing forward new exculpatory evidence."). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House v. Bell*, 547 U.S. 518, 538 (2006). The actual innocence standard is demanding and will be met only in an extraordinary case. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Calderon v. Thompson*, 523 U.S. at 559 (citation omitted).

Petitioner falls far short of the demanding standard to establish a fundamental miscarriage of justice. Petitioner partially recants his confessions to his wife, his father-in-law and the police, but he has not offered new exculpatory evidence that he is actually innocent. As the Utah Court of Appeals concluded when it rejected his direct appeal, testimony from Petitioner's wife and victims "was entirely distinct from—but nevertheless corroborative of—the details Streeper

shared in his confessions." *State v. Streeper*, 523 P.3d at 718. Petitioner has offered no reliable exculpatory evidence to undermine confidence in his convictions.

Petitioner has offered neither cause to excuse his procedural default of the additional claims he attempted to assert in his Reply, nor that his conviction resulted in a fundamental miscarriage of justice. Therefore, this court will proceed to examine only the single claim he included in his Petition.

## PETITIONER FAILS TO ESTABLISH THAT HIS TRIAL COUNSEL WAS CONSTITUTIONALLY DEFICIENT FOR FAILING TO CALL AN EXPERT ON FALSE CONFESSIONS

A federal court may grant a habeas corpus application arising from a state-court adjudication on the merits of a claim if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

**Legal Standards**

"A state-court decision is only contrary to clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court, or decides a case differently than the Court on a set of materially indistinguishable facts." *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (internal quotation marks omitted). "A state court's decision unreasonably applies federal law if it 'identifies the correct governing legal principle' from the relevant Supreme Court decisions but applies those principles in an objectively unreasonable manner." *Id.* (quoting *Wiggins v. Smith*, 539, U.S. 510, 520 (2003)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Federal courts apply *Strickland*'s familiar two-pronged standard to evaluate claims of ineffective assistance. Under *Strickland*, a petitioner must show (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. The prejudice element requires showing that the errors were so grave as to rob the petitioner of a fair proceeding, with reliable, just results. *Id.* "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland,* at 688). The question before a federal habeas court reviewing claims of ineffective assistance of counsel "'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable --a substantially higher threshold.'" *Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting, Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)). In this context, the Supreme Court has defined "unreasonable" to refer to "cases in which, at first-blush, a state-court judgment seems entirely reasonable, but thorough analysis by a federal court produces a firm conviction that that judgment is infected by constitutional error." *Williams v. Taylor*, 529 U.S. 362, 389 (2000).

**Analysis**

Petitioner's direct appeal alleged that his counsel had been constitutionally deficient by failing to hire an expert on false confessions. The Utah Court of Appeals remanded the issue for an evidentiary hearing. On remand, the trial court heard testimony from Petitioner's trial counsel and the proposed expert on false confessions. The Utah Court of Appeals applied the *Strickland*

standard and rejected Petitioner's claim on the merits. *See State v. Streeper*, 523 P.3d at 716-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)) ("To prevail on a claim of ineffective assistance of counsel, Streeper 'must demonstrate that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense.'"). The Utah Supreme Court summarily denied certiorari.

Petitioner has not shown that the Court of Appeals' decision was contrary to or unreasonably applied federal law. The Court of Appeals concluded that Petitioner had not established that he had been prejudiced by the decision not to call an expert on false confessions. The court articulated six reasons to support its conclusion. The reasons were 1) Petitioner's attorney introduced the idea that Petitioner had been pressured into a false confession through Petitioner's testimony; 2) The expert could not offer an informed opinion on whether Petitioner's family members had employed coercive techniques to elicit his confessions; 3) "the consistent, corroborative, and discreet nature of [Petitioiner's] repeated confessions belies the notion that he may have been prejudiced by the lack of expert testimony on false confessions."; 4) Details in Petitioner's recanted confessions were corroborated by his wife and victims' testimonies; 5) The jury would have been unlikely to believe Petitioner had falsely confessed to some of the crimes but not others; and 6) The expert had not concluded that Petitioner's confessions were false, only that "less weight should be given" to them because of his physical and mental state and the tactics used to "get him to confess." *State v. Streeper*, 523 P.3d at 717-19. The court summarized its analysis:

> In sum, the jury was well aware of Streeper's assertion that some of his confessions were false. It also heard abundant testimony from Streeper's victims, from Wife, from Stepfather, from police officers, and from Streeper himself. And that testimony set forth circumstances highly suggestive of repeated sexual abuse of his daughters, including rape and sodomy. Given these considerations,

> Expert's testimony would not have likely swayed the jury to conclude that Streeper's confession to those more serious acts was false. *See generally State v. Prater*, 2017 UT 13, ¶ 41 n.5, 392 P.3d 398 (stating that a jury is "well positioned to consider" a witness's "explanation" for "shifting" stories and conclude which version of events to believe). Thus, while Counsel could have called an expert, any effect of not doing so, in this particular case, was "not so profound as to undermine our confidence in the proceeding's outcome." *See State v. Ayala*, 2022 UT App 1, ¶ 24, 504 P.3d 755 (cleaned up).

*State v. Streeper*, 523 P.3d 710, 719.

Petitioner has not overcome the demanding standards to overturn a state court's determination. This court need not determine whether the Utah Court of Appeals was correct when it concluded that Petitioner was not prejudiced by counsel's decision to forgo expert testimony on false confessions. Rather, the court must determine whether the conclusion was unreasonable, a substantially higher threshold. *See Knowles v. Mirzayance, 556 U.S. at 123.*

Petitioner explains why he believes the Court of Appeals should have reached a different conclusion, but he has not shown that the Court of Appeals' analysis was unreasonable. The Court of Appeals' remanded petitioner's claim for an evidentiary hearing, considered the evidence and articulated a thorough explanation of its conclusion. Petitioner has not identified any prior Supreme Court holdings affronted by the Court of Appeals' decision. The Court of Appeals identified corroborative evidence in support of the convictions and identified multiple reasons a fairminded jurist might reasonably have discounted the proposed expert testimony.

## CONCLUSION

Petitioner's claims are either procedurally defaulted or do not satisfy the federal habeas standard of review.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and the action **DISMISSED WITHOUT PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 10th day of November 2026.

BY THE COURT

JUDGE DALE A. KIMBALL
United States District Court